1
2
3
4
5
6
7
8                       UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   ADAM RANDOLPH POWELL,                    No.  2:21-cv-0781 DJC DB P

12                 Plaintiff,

13         v.                                 ORDER

14   GOMES, et al.,

15                 Defendants.

16

17         Plaintiff is a state prisoner proceeding with a civil rights action pursuant to 42 U.S.C. §

18   1983.  Plaintiff alleges that defendants were deliberately indifferent to his mental health needs.

19   By order dated January 24, 2024, the undersigned directed defendants and the Warden where

20   plaintiff was housed to show cause why sanctions should not be imposed.  (ECF No. 50.)  For the

21   reasons set forth below, the undersigned will discharge the January 24, 2024, show cause order

22   (ECF No. 50).

23   **I.      Background**

24         On May 2, 2023, the District Court denied defendants' motion for summary judgment and

25   referred this matter back to the undersigned for an evidentiary hearing to determine whether

26   plaintiff exhausted administrative remedies.  (ECF No. 34.)  Donald A. Lancaster Jr. was selected

27   from the Court's Pro Bono Attorney Panel to represent plaintiff for the limited purpose of

28   resolving the exhaustion issue at an evidentiary hearing.  (ECF No. 35.)  By order dated August 7,

                                             1

2023, an evidentiary hearing was set to take place via Zoom on November 16, 2023.  (ECF No. 36.)

On November 16, 2023, the undersigned commenced an evidentiary hearing via Zoom. (ECF No. 43.)  Attorney Donald Lancaster appeared on behalf of plaintiff who was also present via Zoom.  Deputy Attorney General Garrett Seuell and Supervising Deputy Attorney General Tyler Heath appeared via Zoom on behalf of defendants.  All parties consented to proceed with the hearing via Zoom.

Defendants identified three witnesses that would testify at the evidentiary hearing: David Contreras, Michael Gallegos, and Howard Moseley.  (ECF No. 38.)  Shortly before the commencement of the hearing, Mr. Seuell notified court staff that Mr. Gallegos, would not be able to appear via Zoom and was only available by telephone.  The court was also advised that Mr. Contreras would be testifying in state court that morning.  He planned to travel from the Sacramento Superior Court to the Office of the Attorney General in order to testify via Zoom once his state court testimony was complete.

In light of the unavailability and due to other technical difficulties as stated on the record, the undersigned continued the hearing to January 17, 2024.  (ECF No. 43, 45.)  On January 17, 2024, court staff was advised minutes before the hearing was set to commence that the California Department of Corrections and Rehabilitation ("CDCR") failed to transport plaintiff to Sacramento to attend and testify at the evidentiary hearing as ordered by the undersigned.  The evidentiary hearing was continued to March 4, 2024.  (ECF No. 48.)

Thereafter, the undersigned issued an order to show cause why sanctions should not be imposed.  (ECF No. 50.)  Counsel for defendants was ordered to explain why sanctions should not be imposed for the failure to timely notify the Court of the unavailability of two of its three witnesses in advance of the November 3, 2023 hearing.  (Id. at 4.)  The Warden of Kern Valley State Prison was ordered to explain why sanctions should not be imposed for the failure to comply with the writ of habeas corpus ad testificandum issued on December 20, 2023.  (Id.)

////

////

2

1    **II.    Defendants' Response**

2        Defendants argue that sanctions should not be imposed because they contacted the court

3    shortly after being notified of the witness issues.  (ECF No. 55 at 1-2.)  Counsel argues that the

4    slight delay in contacting the Court about the availability of witnesses was inadvertent and not in

5    bad faith.  (ECF No. 55 at 6.)  Counsel avers that he believed he was working in good faith to

6    notify the court of changes and make alternate arrangements for witness appearances.  (Id. at 7.)

7        Counsel further argues that the Court's inherent power to impose sanctions extends only

8    to compensatory sanctions.  (Id.)  Counsel states that they were prepared to proceed without the

9    testimony of the unavailable witnesses before the hearing was continued due to technological

10   issues.  (Id. at 7-8.)  Additionally, counsel argues there is no indication plaintiff incurred any

11   additional expenses as a result of counsel's delay in notifying the court about the unavailability of

12   defendants' witnesses.  (Id. at 8.)

13   **A.  Mr. Contreras**

14       Counsel states that he contacted Mr. Contreras the day after the Court issued the order

15   setting the evidentiary hearing for November 16, 2023.  (ECF No. 55 at 2.)  He was informed Mr.

16   Contreras was on leave of absence, his return date was unknown, and an alternate witness would

17   need to be identified.  (Id.)  On October 12, 2023, the litigation coordinator emailed counsel and

18   informed him Mr. Contreras was back from his leave of absence.  (Id. at 3.)  Counsel immediately

19   contacted Mr. Contreras and confirmed he would be available to testify at the Zoom evidentiary

20   hearing.  (Id.)

21       On November 14, 2023, at 6:30 a.m., counsel emailed the courtroom deputy to request the

22   Zoom login information for the evidentiary hearing.  (Id.)  After obtaining the Zoom information,

23   counsel sent the login information to Mr. Contreras at 10:20 a.m.  (Id.)  At 11:24 a.m., Mr.

24   Contreras emailed counsel and stated he needed to schedule a call with counsel to discuss a

25   potential scheduling conflict with the evidentiary hearing.  (Id.)  Counsel spoke with Mr.

26   Contreras by phone at approximately 1:00 p.m.  (Id.)

27       During the call Mr. Contreras told counsel that in August 2023 his wife and daughter were

28   hit by a drunk driver, his wife died, and his daughter was severely injured.  (Id.)  Mr. Contreras

3

1    recently learned that the drunk driver had a sentencing hearing on November 16, 2023. (Id.) Mr.

2    Contreras wanted to attend and testify at the sentencing hearing before testifying at the

3    evidentiary hearing. Mr. Contreras believed the sentencing hearing would not take too long and

4    he should be available to testify via Zoom around 9:00 a.m. (Id.)

5            Counsel emailed the courtroom deputy, and plaintiff's counsel, at 8:44 a.m. on November

6    15, 2023, to advise that he just received information that Mr. Contreras had a personal family

7    emergency that required him to attend a state court hearing at 8:30 a.m. on November 16, 2023,

8    but he plans to be available by 9:00 a.m. (Id.) The courtroom deputy replied in relevant part, "I

9    believe [Judge Barnes] will be okay with starting a little late as we wait for Mr. Contreras if he is

10   going to join around 9am." (ECF No. 55 at 15.)

11          Supervising Deputy Attorney General Tyler Heath arranged for Mr. Contreras to

12   participate in the Zoom evidentiary hearing from the Attorney General's Office after attending the

13   state court hearing. (ECF No. 55 at 4.)

14         **B. Mr. Gallegos**

15          Counsel confirmed that Mr. Gallegos would be available to testify via Zoom at the

16   evidentiary hearing on October 18, 2023. (ECF No. 55 at 4.) Counsel and Mr. Gallegos had

17   several conversations about Mr. Gallegos' testimony and counsel was never told that Mr.

18   Gallegos did not have access to video via Zoom. (Id.) On November 15, 2023, at 8:08 a.m.,

19   counsel received an email from the California State Prison, Sacramento ("CSP-SAC") litigation

20   coordinator. The email stated in relevant part, that "this was the first time she had received a

21   request to have staff appear for a court hearing via Zoom, and staff do not have immediate access

22   to video equipment for Zoom appearances." (Id.) The litigation coordinator stated that Mr.

23   Gallegos would be able to use the dial-in number to attend the evidentiary hearing. (Id.) Counsel

24   errantly believed the dial-in number listed could be used to phone into the evidentiary hearing.

25          Counsel learned that the telephonic appearance was not acceptable on November 16,

26   2023, at 9:19 a.m. (Id.) He advised the litigation coordinator that the court would not permit a

27   telephonic appearance and requested that Mr. Gallegos be given a laptop with Zoom access. (Id.)

28   ////

1  At 9:39 a.m., the litigation coordinator advised that Mr. Gallegos had logged into Zoom with

2  video access.  (Id. at 4-5.)

3  ### III.    The Warden's Response

4         The response submitted by the warden provides that the institution has a three-step

5  process for processing order to produce inmates for hearings.  (ECF No. 55-1 at 2.)  Under the

6  process, (1) the orders would be reviewed the Correctional Case Records Manager to confirm the

7  validity; (2) the order would then be forwarded to the Classification and parole Representative to

8  check for any security concerns; (3) finally, the order would then be sent to staff at the out-to-

9  court desk to complete the necessary paperwork to effectuate the appearance, including placing

10 the appearance on calendar and arranging for transportation.  (Id.)

11        The Warden's response states that due to a "mistake, staff at the out-to-court desk missed

12 the order and the appearance was not calendared and transportation was not scheduled.  (Id. at 2-

13 3.)  In a declaration attached to the response, a staff member states that a change has been made to

14 the procedures to fix the error that led to the failure to produce plaintiff for the January 17, 2024,

15 hearing.  (ECF No. 55-2 at 3.)  Finally, the Warden states that sanctions should not be imposed

16 because the failure to produce plaintiff was the result of an inadvertent mistake and not done

17 deliberately or in bad faith.  (ECF No. 55-1 at 3.)

18 ### IV.    Legal Standards

19        The Court "has inherent power to enforce its orders by holding those who violate those

20 orders in civil contempt and issuing corresponding sanctions."  Ochoa v. Lopez, No. CV 11-9239

21 AG (MLGx), 2016 WL 9712071 at *1 (C.D. Cal. June 20, 2016) (citing Shillitani v. United

22 States, 384 U.S. 364, 370 (1966)).  A "district court has wide latitude in determining whether

23 there has been a contemptuous defiance of one of its orders."  Stone v. City of San Francisco, 968

24 F.2d 850, 856 (9th Cir. 1992).  Sanctions issued against an individual held in civil contempt serve

25 two purposes.  First, sanctions can be used to make the individual comply with the Court's order.

26 Whittaker Corp. v. Execuair Corp., 953 F.2d 510, 517 (9th Cir. 1992).  Second, sanctions can be

27 used to compensate the person harmed by the violation of the order for the harm caused.  Id.

28 ////

1       **V.      Analysis**

2           "Before awarding sanctions under its inherent powers . . . the court must make an explicit

3   finding that the conduct 'constituted or was tantamount to bad faith.'"  <u>Primus Automotive</u>

4   <u>Financial Services, Inc. v. Batarse</u>, 115 F.3d 644, 648 (9th Cir. 1997) (quoting <u>Roadway Express,</u>

5   <u>Inc. v. Piper</u>, 447 U.S. 752, 767 (1980)).  The term bad faith "includes a broad range of willful

6   improper conduct."  <u>See</u> <u>Fink</u>, 239 F.3d at 992.  Sanctions are therefore "available for a variety of

7   types of willful actions, including recklessness when combined with an additional factor such as

8   frivolousness, harassment, or an improper purpose.  <u>Id.</u> at 994.  "Willful misconduct" or "conduct

9   tantamount to bad faith" is "something more egregious than mere negligence or recklessness."  <u>In</u>

10  <u>re Lehtinen</u>, 564 F.3d 1052, 1058 (9th Cir. 2009) (internal quotation marks and citations omitted)

11  <u>abrogated on other grounds by</u> <u>Bullard v. Blue Hills Bank</u>, 575 U.S. 496 (2015).  Sanctions

12  should be reserved for "serious breaches," <u>Zambrano v. City of Tustin</u>, 885 F.2d 1473, 1485 (9th

13  Cir. 1989), "[b]ecause of their very potency, inherent powers must be exercised with restraint and

14  discretion." <u>Chambers</u>, 501 U.S. at 44.

15          Examples of bad faith include "knowingly or recklessly rais[ing] a frivolous argument, or

16  argu[ing] a meritorious claim for the purpose of harassing an opponent."  <u>In re Keegan</u>

17  <u>Management</u>, 78 F.3d 431, 436 (9th Cir. 1996). A party may also demonstrate bad faith by

18  "delaying or disrupting the litigation or hampering enforcement of a court order."  <u>Hutto v.</u>

19  <u>Finney</u>, 437 U.S. 678, 689 n.14 (1978).   Recklessness, when combined with an additional factor

20  such as frivolousness, harassment, or an improper purpose, may support sanctions, <u>Gomez v.</u>

21  <u>Vernon</u>, 255 F.3d 1118, 1134 (9th Cir. 2001); <u>Fink</u>, 239 F.3d at 994, but mere negligence or

22  recklessness will not suffice, <u>In re Lehtinen</u>, 564 F.3d at 1058.

23          Both counsel's brief delay in notifying the court of issues causing witnesses to be

24  unavailable and the warden's failure to produce plaintiff amount to at most reckless or negligent

25  conduct.  Accordingly, the undersigned finds that imposition of sanctions is not warranted.  <u>See</u>

26  <u>Zambrano</u>, 885 F.2d at 1483 (The imposition of sanctions is not warranted where the record

27  indicated that the conduct was nothing "more than an oversight or ordinary negligence.").

28  Accordingly, the show cause order will be discharged.

## VI.    Conclusion

For the reasons set forth above, the order to show cause issued on January 24, 2024, is discharged and sanctions will not be imposed.

Dated:  March 28, 2024

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DB:12
DB/DB Prisoner Inbox/Civil Rights/S/powe0781.osc.discharge