UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAM RANDOLPH POWELL,<br><br>Plaintiff,<br><br>v.<br><br>GOMES, et al.,<br><br>Defendants. | No.  2:21-cv-0781 DJC DB P<br><br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff claims defendants were deliberately indifferent to his mental health needs.  In 2022, defendants moved for summary judgment on the grounds that plaintiff failed to exhaust his administrative remedies prior to filing this action.  The court denied the motion.  The court ordered an evidentiary hearing to resolve factual disputes regarding the availability of the grievance process to plaintiff.  On March 4, 2024, the undersigned held an evidentiary hearing. For the reasons set forth below, the undersigned will recommend that the district court find that administrative remedies were unavailable to plaintiff and excuse plaintiff from the exhaustion requirement of the Prison Litigation Reform Act ("PLRA").

////

////

////

1

**I.      Background**

**A.  Allegations in the Complaint**

Plaintiff claims the events giving rise to the claim occurred while he was incarcerated at California State Prison, Sacramento (CSP-SAC).  (ECF No. 21 at 1.)  Plaintiff has identified CSP-SAC correctional officers Gomes and Hudspeth as defendants in this action.  (Id. at 2.)

On October 7, 2020, plaintiff told officer Hudspeth that he was suicidal.  (Id. at 3.) Hudspeth put plaintiff back in his cell.  Plaintiff "swallowed several pain medication bottles in front of [officer] Hudspeth."  Hudspeth walked away.  Plaintiff's cellmate, Ahmad Jones, yelled, "he's trying to kill himself."  Jones tried to call officer Gomes who was working nearby.  When Hudspeth came by for count at 9:00 p.m., Jones told Hudspeth that plaintiff swallowed several bottles of pills, but Hudspeth ignored him.  Jones broke out of the cell windows to get plaintiff medical attention.

Plaintiff further alleges that both Hudspeth and Gomes were aware plaintiff swallowed multiple pill bottles, but they failed to ensure plaintiff got medical attention.  (Id. at 4.)  Hudspeth and Gomes left without calling for plaintiff to receive medical attention.  Plaintiff had to wait until around 11:00 p.m. when he received help from the first watch correctional officers.  (Id.)

**B.  Procedural History**

Plaintiff initiated this action by filing the original complaint.  (ECF No. 1.)  Upon screening the undersigned determined the complaint contained a potentially cognizable deliberate indifference claim against defendants Hudspeth and Gomes.  (ECF No. 5.)  Defendants were served and this action was referred to the court's Post-Screening ADR (Alternative Dispute Resolution) Project.  (ECF No. 12.)  Defendants moved to opt-out and this case proceeded to discovery.  (ECF Nos. 13, 14, 16.)

During the discovery process plaintiff filed an amended complaint and defendants filed an amended answer.  (ECF Nos. 21, 24.)  Thereafter, defendants moved for summary judgment (ECF No. 27), plaintiff filed an opposition (ECF No. 28), and defendants filed a reply (ECF No. 30).

////

### C.  Summary Judgment

On September 19, 2022, defendants filed a motion for summary judgment.  (ECF No. 27.)  Therein, they argued that they were entitled to summary judgment because plaintiff failed to exhaust administrative remedies as to his claim.  (Id.)  Plaintiff opposed the motion arguing he submitted his appeal for second level review via institutional mail.  (ECF No. 28.)

The undersigned recommended that the motion be denied because it could not be resolved based on the record and further recommended that an evidentiary hearing be set to determine whether plaintiff exhausted administrative remedies.  (ECF No. 31.)  The findings and recommendations were adopted in full on May 1, 2023.  (ECF No. 34.)  Thereafter, the undersigned appointed Donald Lancaster Jr. to represent plaintiff for the limited purpose of resolving the exhaustion issue.  (ECF No. 35.)

### D.  Evidentiary Hearing

An evidentiary hearing was scheduled to take place on November 16, 2023.  (ECF No. 36.)  For reasons stated on the record the hearing was continued twice.  (ECF Nos. 43, 48.)  The evidentiary hearing took place on March 4, 2024.  (ECF No. 57.)  At the hearing, Mr. Lancaster appeared on behalf of plaintiff, who was also present.  Garrett Seuell and Tyler Heath appeared on behalf of defendants.  The court heard testimony from plaintiff, Adam Powell, and defense witnesses, David Contreras, Michael Gallegos, and Howard Moseley.  The court took the matter under submission and advised the parties a written decision would issue.

At the hearing plaintiff argued that he was placed in COVID-19 quarantine for the entire month of December 2020 and did not receive his property until approximately mid-January 2021.  He alleges that he submitted an appeal after he received his property in mid-January 2021.  Defendants argued that plaintiff could have submitted an appeal while in quarantine and records indicated that plaintiff did not submit an appeal.

## II.    Legal Standards

### A.  PLRA Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA") mandates that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner

confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Compliance with deadlines and other critical prison grievance rules is required to exhaust.  Woodford v. Ngo, 548 U.S. 81, 90 (2006) (exhaustion of administrative remedies requires "using all steps that the agency holds out, and doing so properly").  "[T]o properly exhaust administrative remedies prisoners 'must complete the administrative review process in accordance with the applicable procedural rules,' - rules that are defined not by the PLRA, but by the prison grievance process itself."  Jones v. Bock, 549 U.S. 199, 218 (2007) (quoting Woodford, 548 U.S. at 88); see also Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion.'" (quoting Jones, 549 U.S. at 218)).

Although "the PLRA's exhaustion requirement applies to all inmate suits about prison life," Porter v. Nussle, 534 U.S. 516, 532 (2002), the requirement for exhaustion under the PLRA is not absolute, Albino v. Baca, 747 F.3d 1162, 1172-72 (9th Cir. 2014) (en banc).  As explicitly stated in the statute, "[t]he PLRA requires that an inmate exhaust only those administrative remedies 'as are available.'" Sapp v. Kimbrell, 623 F.3d 813, 822 (9th Cir. 2010) (quoting 42 U.S.C. § 1997e(a)) (administrative remedies plainly unavailable if grievance was screened out for improper reasons); see also Nunez v. Duncan, 591 F.3d 1217, 1224 (9th Cir. 2010) ("Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available.").  "We have recognized that the PLRA therefore does not require exhaustion when circumstances render administrative remedies 'effectively unavailable.'" Sapp, 623 F.3d at 822 (citing Nunez, 591 F.3d at 1226); accord Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) ("The obligation to exhaust 'available' remedies persists as long as some remedy remains 'available.' Once that is no longer the case, then there are no 'remedies . . . available,' and the prisoner need not further pursue the grievance.").

"Nonexhaustion" is "an affirmative defense" and defendants have the burden of "prov[ing] that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Id. at 1171-72.  A remedy is "available" where it is "capable of use; at hand." Williams v. Paramo, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting Albino, 747

F.3d at 1171).  Grievance procedures that do not allow for all types of relief sought are still "available" as long as the procedures may afford "some relief."  <u>Booth v. Churner</u>, 532 U.S. 731, 738 (2001).  If a defendant meets the initial burden, a plaintiff then must "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."  <u>Albino</u>, 747 F.3d at 1172.  Remedies are "effectively unavailable" where they are "ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile."  <u>Id.</u> (quoting <u>Hilao v. Estate of Marcos</u>, 103 F.3d 767, 778 n.5 (9th Cir. 1996)).  "[T]he ultimate burden of proof," however, never leaves the defendant. <u>Id.</u>

### B.  California's Inmate Appeal Process

"The California prison system's requirements 'define the boundaries of proper exhaustion."  <u>Marella v. Terhune</u>, 568 F.3d 1024, 1027 (9th Cir. 2009) (quoting <u>Jones</u>, 549 U.S. at 218).  California prisoners may "submit a written grievance to the department containing one or more claims . . . to dispute a policy, decision, action, condition, or omission by the department or departmental staff."  Cal. Code Regs. tit. 15, § 3481(a).  During the time period relevant to this action,[1] the grievance process consisted of two levels of review.  Inmates are required to submit a grievance in writing to the Institutional Office of Grievances at the institution where they are housed within sixty days.  Cal. Code Regs. tit. 15, § 3482(b)(1).  The Office of Grievances is required to issue a written grievance decision within sixty days.  Cal. Code Regs. tit. 15, § 3483(g).  If the inmate is dissatisfied, they may submit an appeal to the Office of Appeals.  Cal. Code Regs. tit. 15, § 3484(b).  In general, an appeal is exhausted when the Office of Appeals issues a final decision.  Cal. Code Regs. tit. 15, § 3485(l).

A California prisoner is required to submit an appeal at the appropriate level and proceed to the highest level of review available to him.  <u>Butler v. Adams</u>, 397 F.3d 1181, 1183 (9th Cir.

---

[1] In 2020, California changed the grievance system from a three-tier system to a two-tier system. The change became effective on June 1, 2020, after plaintiff initiated the relevant appeal in the present case.  <u>See</u> Cal. Code Regs. tit. 15, § 3480.  The events giving rise to the claim occurred in October 2020, after the change became effective.  All citations to the California code in the text refer to the current version of the law.

2005); <u>Bennet v. King</u>, 293 F.3d 1096, 1098 (9th Cir. 2002).  In submitting a grievance, an inmate is required to "describe all information known and available to [him] regarding the claim including key dates and times, names and titles of all involved staff members (or a description of those staff members), and names and titles of all witnesses, to the best of the claimant's knowledge" and "include all supporting documents available to the claimant related to the claim or identity to the best of the claimant's ability all relevant records with sufficient specificity for those records to be located."  Cal. Code Regs. tit. 15, § 3482(c)(2), (c)(4).

### III.    Facts

The facts adduced at the evidentiary hearing and available in the record show the following:

At all times relevant to the claim, plaintiff was incarcerated by the California Department of Corrections and Rehabilitation ("CDCR"), at California State Prison, Sacramento ("CSP-SAC").  (Defendants' Statement of Undisputed Facts ("DSUF") (ECF No. 27-2) at ¶ 1, 2.)

CDCR and CSP-SAC have an administrative grievance procedure in place for inmates to use to exhaust complaints.  (DSUF (ECF No. 27-2) at ¶ 3.)  Plaintiff utilized the grievance process by filing an administrative grievance.  (DSUF (ECF No. 27-2) at ¶ 4.)  Plaintiff submitted one grievance related to the allegations in the complaint.  (DSUF (ECF No. 27-2) at ¶ 5.)  The grievance was submitted on October 19, 2020, and assigned log number 50250.  (DSUF (ECF No. 27-2) at ¶ 5, 6.)  Grievance log No. 50250 alleged that defendants violated plaintiff's rights on October 7, 2020, by failing to provide plaintiff medical and mental health treatment after he told them he was suicidal and swallowed multiple pills.  (DSUF (ECF No. 27-2) at ¶ 6.)

The Office of Grievances issued a response to grievance log No. 50250 on December 3, 2020.  (DSUF (ECF No. 27-2) at ¶ 7.)  The response advised plaintiff that if he was unsatisfied with the decision, he could file a 602-2 appeal form with the Office of Appeals.  (DSUF (ECF No. 27-2) at ¶ 7.)  Records from the Office of Appeals indicate that no appeal associated with grievance log No. 50250 was received.  (DSUF (ECF No. 27-2) at ¶ 8.)  Records further indicate that plaintiff did not file any other grievances related to his allegations in this action.  (DSUF (ECF No. 27-2) at ¶ 9.)

Plaintiff tested positive for COVID-19 in late November 2020, after Thanksgiving.  (ECF No. 29 at 2.)  He was moved to a quarantine unit where he remained until January 2021.  (ECF No. 29 at 1-2; ECF No. 56 at 9-10.)

### IV.    Analysis

At the hearing, plaintiff testified that he was unable to submit a timely appeal of grievance log No. 50250 because he was confined to a COVID-19 quarantine unit.  He specifically stated that he was moved on November 30, 2020, and released from quarantine on January 1, 2021.[2]  Defendants presented no testimony or other evidence to directly rebut plaintiff's testimony that he was confined in a COVID-19 quarantine unit during this period.

"To be available, a remedy must be available 'as a practical matter'; it must be 'capable of use; at hand.'"  Albino v. Baca, 747 F.3d 1162, 1171 (9th Cir. 2014) (quoting Brown v. Croak, 312 F.3d 109, 112 (3d Cir. 2002)).  Albino, 697 F.3d at 1034 ("[A]ffirmative actions by jail staff preventing proper exhaustion, even if done innocently, make administrative remedies effectively unavailable.")  A statement that inmates were generally able to file appeals is not sufficient to show that plaintiff was able to file an appeal.  Williams v. Paramo, 775 F.3d 1182 (9th Cir. 2015); Dillon v. Rogers, 596 F.3d 260, 268-69 (5th Cir. 2010) (records showing 53 other inmates had filed grievances during the period in question did not demonstrate that administrative remedy was available to plaintiff).

The evidence presented by defendants, that inmates are generally able to file appeals while quarantined, does not rebut plaintiff's sworn testimony that he was advised by an officer that he would not be permitted to file an appeal while he was quarantined.  Moreover, permitting a defendant to show that remedies merely existed in a general sense where a plaintiff has specifically alleged that official action prevented him from filing a particular appeal would force

////

_____

[2] In support of his placement on a quarantine unit, plaintiff submitted a document reflecting his housing assignments during the relevant time period.  (ECF No. 56 at 9-10.)  Plaintiff's exhibit reflects his housing assignment was updated on November 30, 2020, December 7, 2020, and January 2, 2021.  (Id.)  From November 30, 2020 through January 2, 2021 plaintiff's housing program was listed as "Varied Use."  (Id.)

1   a plaintiff to bear the burden of proof, a burden which the plaintiff does not bear.  Albino, 747

2   F.3d at 1172.

3          Mr. Moseley testified that in 2021,[3] an inmate had 30 calendar days, from receipt of the

4   decision from the Office of Grievances, to file an appeal.  The Office of Grievances' decision was

5   issued on December 3, 2020.  (ECF No. 40 at 10.)  Plaintiff's unrebutted testimony indicated that

6   he was not released from quarantine until January 1, 2021, and did not receive his property until

7   approximately January 14, 2021.  Thus, plaintiff would not have been able to file an appeal within

8   thirty calendar days of receiving the decision from the Office of Grievances.

9          Defendants also put forth testimony indicating that under the applicable regulations,

10  plaintiff would not have been permitted an extension of the time to submit an appeal based on his

11  placement in a quarantine unit.  Rather, the regulations cited by defendants provide that the time

12  limits to submit an appeal may only be extended if the inmate is: (A) in the custody of another

13  authority for court proceedings; (B) in the care of an outside hospital; (C) temporarily housed in a

14  medical or mental health crisis bed; or (D) actively and directly engaged in fire suppression."

15  Cal. Code Regs. tit. 15 § 3484(b)(2).  Plaintiff's placement in a quarantine housing unit would not

16  have qualified for an extension of time to submit an appeal.

17         The undersigned finds that defendants have failed to meet their burden of establishing that

18  administrative remedies were available to plaintiff during the time allotted to plaintiff for filing an

19  appeal.  Therefore, plaintiff should be excused from compliance with the PLRA's exhaustion

20  requirement.

21  ////

22  ////

23  ////

24  ////

25  ////

26

27  [3] The Court notes that currently the applicable regulation states that an appeal must be submitted
    within sixty days of receiving the Office of Grievances decision.  Cal. Code Regs. tit. 15, §
28  3484(b).

1    **V.    Conclusion**

2        For the reasons set forth above, IT IS HEREBY RECOMMENDED that the district court

3    find that administrative remedies were unavailable to plaintiff and excuse plaintiff from the

4    exhaustion requirement of the PLRA.

5        These findings and recommendations will be submitted to the United States District Judge

6    assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within thirty days after

7    being served with these findings and recommendations, either party may file written objections

8    with the court.  The document should be captioned "Objections to Magistrate Judge's Findings

9    and Recommendations."  The parties are advised that failure to file objections within the specified

10   time may result in waiver of the right to appeal the district court's order.  Martinez v. Ylst, 951

11   F.2d 1153 (9th Cir. 1991).

12   Dated:  April 1, 2024

13

14                                              _____

15                                              DEBORAH BARNES
                                                UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20

21

22

23   DB:12
     DB/DB Prisoner Inbox/Civil Rights/S/powe0781.exh(ev hrg) fr

24

25

26

27

28